Wash, J.,
delivered the opinion of the Court.
This was an action brought by Dunky, the appellee, against Hay, the appellant, in the St. Louis Circuit Court, to recover her freedom. On the trial in the Circuit Court Dunky obtained a verdict and judgment, from which Hay appealed to this Court. The declaration is in common form under the statute authorizing suits to be instituted for the trial of the right to freedom. The defendant pleaded three pleas.
First. Not guilty.
Second. That the plaintiff was a slave.
And third. That the plaintiff was held to labor in the State of Illinois, and had escaped to Missouri at the time of the alledged trespass; with a special traverse in the two last pleas, of the plaintiff’s right to freedom.
Issues were joined on these pleas, and on the trial it was proved that the plaintiff, about the year 1811, was brought by the agent of William Morrison from the State <of Virginia to Kaskaskias in the State of Illinois, and was held as a slave by Morrison, in the Territory and State of Illinois. On the' part of the defendant it was *404 proved, that the plaintiff was held in, servitude in the'State of Illinois, and that before the commencement of this action, she came to this State without the consent of the person claiming: her services in Illinois j, and that before the commencement of this suit, the defendant arrested, the plaintiff in Missouri,for the purpose of removing her to Illinois, as the agent of the person who claimed her services there, and that the defendant exercised, over the plaintiff no other control in Missouri than was necessary for such removal. The defendant then gave in evidence a statute law of the Territory of Illinois, passed on the 17th of September, 1807, being an act entitled “An Act concerning- the introduction of negroes and mulattoes into this Territory.” The first section of the act authorizes the owners or purchasers of slaves in any of the States or Territories of the United States, to bring them into Illinois. The second section provides, that “ the owner or possessor of any negroes or mulattoes, as aforesaid, and bringing, the same into this Territory, shall within, thirty days after such removal, go with, the same before the Clerk of the Court of Common, Pleas of the proper county, and; in the' preseuce.of the said Cleric, the said owner or possessor shall determine and agree to-and with his or her negro or mullatto, upon the term of years which the said negro or mullatto will and shall serve his or her said owner or possessor, and the said Cleric is hereby authorized and required to make a record thereof in a book which he shall keep for that purpose.” The third section provides for the removal of such negro or mullatto- as shall refuse to serve his or her owner as aforesaid, into, any other State or Territory within sixty days after such refusal, &c. The fifth section of the act provides1, that where the negro or mulatto so, introduced-into the Territory as aforesaid, shall be under the age of fifteen years, it shall be lawful for the owner or possessor to hold said negro or mulatto to service, the male until he shall arrive at the age of thirty-five, and the female to the age of thirty-two years. The sixth section provides, that “ any person removing any negro or mulatto into this Territory under the authority of the preceding sections, it shall be incumbent on-, such person within thirty days thereafter, to register the name and age of such negro, or mulatto with the Clerk of the Court of Common Pleas, for the proper county.” The other sections proyide penalties for neglect, &e., and need not be noticed. The defendant then gave in evidence a.copy of the record of registry in Illinois, made up-in tabular form, and showing that the plaintifi).in November, 1811, (she being then IS years old,) was indentured to William Morrison to serve forty years. Upon this state of facts, the Court instructed the jury that if they believed, from the evidence, that the plaintiff in this cause was registered in the Territory of Illinois as an indentured servant in the year 1811, in pursuance of the act of the Legislature given in evidence in. this ease, for a period not yet expired, and that she came into this State without the consent of'the person claiming her services in Illinois, and that the defendant exercised no authority over her in this State, except what was necessary to remove her into Illinois, for the person claiming her services there, they must find for the defendant. The Court also instructed the jury, that the copy of the record of registry given in evidence in this case, establishes the agreement on the part of tire plaintiff to serve William Morrison for the period in that copy mentioned, in pursuance of the laws of the Territory of Illinois. The jury found a verdict for the plain-, tiff, which the defendant moved to have set aside and a new trial granted, for the following reasons:
Eirst. Because the verdict is against the evidence.
Second. Because the verdict is without evidence..
*405 Third. Because the verdict is against law.
And fourth. Because the verdict is against the instructions of the Court.
The motion for a new trial was overruled, and the opinion of the Court thereon' excepted to, and is now assigned for error.
For the appellant it is insisted, first, that the plaintiff was rightfully held to labor in the State of Illinois at the time of commencing this suit. In support Of this position, the appellant’s counsel relies on the third section of the sixth article of the Illinois State Constitution, which provides, that “ each and every person who has been bound to service by contract or indenture in Virtue of the laws of the Illinois Territory heretofore existing, and' in- conformity to the provisions of the same, without fraud or collusion, shall'be held’ to a specific performance of their contracts or indenture's; and such-negroes and mulattbes as have been registered in conformity with the aforesaid laws, shall'serve out the time appointed by said laws, &c.” And' then it is insisted that if by the' laws of Illinois; the plaintiff was held to labor there, she cannot be discharged'in any other State into which she escapes from Illinois, and the counsel for the' appellant cites the third clause of the 2d Section of the 4th'article of the Constitution of the United States, which provides, that' " no person held to service or labor in one State under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from suclvservice or labor; but shall be delivered'up on claim of the party to whom'such service or latSo'r may be direand lastly, it is insisted that the copy Of the record of regisfly given in evidence in this case,' proves'the fact that the plaintiff was held' to Service or labor in the State of Illinois, agreeably to the provisions of the above'recited'act of the'TerritbriaTLegislature of 1807, the proceedings under which being effectual in Illinois, were according to the provisions of the 1st section of the 4th article of the Constitution of the United' States, and the 3d section of the 56th chapter of the acts of Congress of 1804, to be regarded’ as'of equal force and effect'in Missouri, &c. Oh the Other’side it'is insisted for the appellee', that the motion for a new trial' was properly overruled, because the first instruction given by the Court was hypothetical, and left’the jury free tepass upon the validity of the defence set up in evidence, and the second'instruction given by the Court was, that the copy of the registry offéred'was evidence of an agreement by the plaintiff to serve the defendant, not'that it was in conformity to any law of the Territory of Illinois, or imposed any obligation to serve by contract or indenture.
Secondly. That the instructions given by the'Ccmrt were both wrong, because the act of 1807 was in fraud’and violation of’the ordinance of 1787, and a regular indenture under it would have been null and Void, and because the registry under the fraudulent act did not amountto a contract or indenture, as therein provided for.
Thirdly. That the 6th article’ of the Constitution of the State of Illinois, relied on by the appellant, does not apply to the case before the Court;'or if it can be construed as applying to such a registry as was proved in this case, then, that this pro-vision of the Constitution is illegal and void, &c. The ordinance of 1787, above re-ferred to, provided'in clear and express térms, that'there should be neither slavery nor involuntary servitude within the Territory ceded by Virginia to the United States, of which Illinois formed a part, and it is manifest that the act of the' Territo-rial Legislature of 1807, referred to, was in violation of that provision"of the ol-di-nance. It has been so decided by the Supreme Court of the State oTTllinois, and is zs matter conceded by. the appellant’s counsel. Indeed, it seems strange’that *406 sensible.apd.honest men, any doubt could ever have arisen. Yet is contended that, the 6th art. of the Illinois constitution, recognized the act of the Territorial Legislaiure of 1807, and legalized the qualified slavery or servitude provided for or imposed, by that act. Upon principles of constitutional law, it may. for the present be conceded, that if such was the object of the convention in framing the article referred to, the rights secured under it to the citizens of Illinois, cannot be defeated or legally interfered with, by the tribunals of any other Statebut that persons held to service or labor in Illinois, under the 6th art. of their constitution, and escaping into Missouri, or any other State, ought to.be delivered up on claim of the party to whom such service or labor may be due. See 3d clause of the 2d sec. 4th art. of Const. U. S. This Court is prepared to go further on this point than the Supreme Court of Illinois have gone, and we hold that it was competent for the convention in forming a State Government for Illinois, not only to have legalized the act of the Territorial Legislature of 1807, but to have provided for the introduction and existence of unconditional or absolute slavery. Such is now the sovereign right of every State in the Union. Illinois in becoming a State, became at once the equal in.all claims to sovereignty to any and every other State. The right to hold slaves “is out and out from beginningto end a pure question of power. Individually, all men have equal rights to life, liberty and property. In communities or governments, mere brute force or the physical strength of the majority (as it is called,) abridges or annihilates these rights at pleasure. What the despot or the despotic will of the majorily, through any other medium, decrees or permits, becomes the law of the land, and cannot be resisted by the members of such communities or government, upon any other principle than that of rebellion, which assumes that the majority have changed, or soon will, or ought to revoke or change their decrees, &c. Every independent nation or organized community judges for itself, and its judgment is final between those who belong to such nation or community, and cannot be interfered with by other governments or communities, without affording just cause of war, if the party injured may choose to think itself able to redress the wrong in that way.” Conceding then, that the convention had full power to legalize the slavery provided for in the act of the Territorial Legislature referred to,, the next question to be considered is, have they done so ? The language made use of in the constitution is not very clear, and would justify the belief, “that more was meant than meets the eye.” The first clause or member of the sentence provides that “each and every person who has been bound to service by contract or indenture, in virtue of the laws of the Illinois Territory heretofore existing, and in conformity, to the provisions of the same, without fraud or collusion, shall be held lo a specific performance of their contracts or indentures.” This is a general provision, with reference to.all contracts, by all persons, bond or free, under the general laws in force in the Territory. It applies to indentures of apprentices and such other contracts for service, as had been legally executed by persons capable of contracting by virtue of the. laws in-force in the Territory.
If it had been intended to apply to contracts and indentures entered into by negroes and mulattoes, under the act of the Territorial Legislature of 1807, it has failed of its object, and the provision is inoperaptive through repugnancy. Such contracts or indentures were in fraud and violation of the ordinance, and therefore could not have been reached and classed with contracts and indentures entered into, “without fraud or collusion,” as described and referred to in this clause of the 6tk art. *407 The second clause or member of the sentence above recited from the 6th article, as if taking up a new subject, provides, “and such negroes and mulattoes as have been registered in conformity with the aforesaid laws, shall serve out the time appointed by said law.” Under this provision the counsel for the appellant insists, that the right of Morrison to the services of Dunky, is confirmed, and that the Constitution of the United States, (art. 4, sec. 2 and 3,) protects and secures him in the enforcement of that right. The 6th section of the act of the Territorial Legislature of 1807, above cited, requires that all negroes and mulattoes shall be registered, when introduced under that act, but does not appoint or fix the time or term for which they, are to serve;, and it is only in the 5th section of. the act that any time is fixed or appointed, and that in reference to such negroes and mulattoes only, as are under the-age of fifteen years at the time of their removal into the Territory, and upon these and these only can this second clause (of the 3d sec. of the 6th. art.) have any operation, all others were to-serve according to their indentures, and the time of service-was fixed by their indentures and not appointed by the laws. The record shows that, the plaintiff in this case was over fifteen. This view of the matter makes it unnecessary to examine particularly the other questions raised in the argument of the cause. The judgment of the Circuit. Court is affirmed with costs.